UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| R.R.; G.J.; R.G.; all others similarly situated; and DISABILITY RIGHTS WASHINGTON,<br><br>Plaintiffs,<br><br>v.<br><br>WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES; PATRICIA LASHWAY, in her official capacity as Acting Secretary of the Department of Social and Health Services; SPECIAL COMMITMENT CENTER; WILLIAM VAN HOOK, in his official capacity as Chief Executive Officer of Special Commitment Center,<br><br>Defendants. | No.<br><br>JOINT MOTION FOR:<br>(1) PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT<br>(2) APPROVAL OF CLASS NOTICE PACKAGE; AND<br>(3) ESTABLISHMENT OF A SETTLEMENT APPROVAL HEARING AND PROCESS<br><br>**Noted for Consideration:** |

## I. INTRODUCTION

In September 2014 Disability Rights Washington (DRW), the designated protection and advocacy organization for Washington, began investigating the care and treatment provided to people with serious mental illness, intellectual and developmental disabilities, traumatic brain injuries, and other cognitive conditions who are confined at the Special Commitment Center (SCC) on McNeil Island. As part of that investigation, DRW interviewed SCC residents, requested the records for over a dozen residents, reviewed treatment materials and program policies, and

JOINT MOTION FOR: PRELIMINARY APPROVAL OF
SETTLEMENT AGREEMENT; APPROVAL OF CLASS
NOTICE PACKAGE; AND ESTABLISHMENT OF A
SETTLEMENT APPROVAL HEARING AND PROCESS - 1

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

repeatedly visited the facility. In January 2015 DRW sent a letter outlining some of its concerns to SCC administration and counsel for the facility. In February 2015, DRW met with the now-former Chief Executive Officer at the SCC, along with his executive team, regarding its preliminary findings. After additional monitoring and investigation, DRW drafted a federal complaint, alleging that residents with serious mental illness, developmental and intellectual disabilities, traumatic brain injuries, and other cognitive conditions were unable to meaningfully participate in SCC's sex offender program due to their disabilities, leaving them to languish for years in harsh, often restrictive, conditions of confinement. In September 2015, DRW forwarded the complaint to the SCC. Counsel for SCC thereafter reached out to DRW and the parties entered into negotiations regarding the issues identified in the complaint. After extended negotiations, the parties have now come to an agreement. *See* Final Settlement Agreement, attached hereto as *Appendix 1.*

Under the terms of the Settlement Agreement, the SCC will implement significant and comprehensive changes to the care and treatment provided to residents with serious mental illness, developmental and intellectual disabilities, traumatic brain injuries, and other cognitive conditions. The Settlement Agreement establishes specific requirements to enhance the therapeutic milieu for these residents and improve individualized treatment plans, which include positive behavioral plans, appropriate sex offender treatment programming, and discharge planning. It calls for staffing increases as well as appropriate medical, psychiatric, nursing, and rehabilitative care for class members. It creates a three-expert panel which may provide technical assistance as the SCC implements changes to its program; this same expert panel will assess the SCC's progress towards compliance with the terms of the Settlement Agreement. It also provides for continued monitoring as well as quarterly data reports and meetings between DRW and Defendants. In short, the Settlement Agreement aims to ensure that current and future SCC residents with serious mental

JOINT MOTION FOR: PRELIMINARY APPROVAL OF
SETTLEMENT AGREEMENT; APPROVAL OF CLASS
NOTICE PACKAGE; AND ESTABLISHMENT OF A
SETTLEMENT APPROVAL HEARING AND PROCESS - 2

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 ᐧ Fax: (206) 957-0729

illness, intellectual or developmental disabilities, traumatic brain injuries, and other cognitive conditions, are provided with the appropriate and individualized treatment to which they are entitled.

As a direct result of this litigation, it is anticipated that this group of residents, will have access to the specialized sex offender treatment program offered at the facility and will be provided with appropriate mental health care, including psychiatric care and positive behavioral support plans. These residents will live in a therapeutic environment in which they receive treatment geared towards their individual cognitive conditions and abilities so that they can understand and progress through the program and advance towards a less restrictive setting when appropriate.

Accordingly, Plaintiffs move for an Order preliminarily approving the Settlement Agreement. Specifically, pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs hereby move the Court to:

(a) preliminarily approve the Settlement Agreement;

(b) authorize the mailing of notice to class members and other forms of notice provided for in the Settlement Agreement; and

(c) establish a final settlement approval hearing and process.

## II. EVIDENCE RELIED UPON

Plaintiffs rely upon the Declaration of Rachael Seevers ("Seevers Decl."), submitted with this Motion. Defendants join in making this Motion and have submitted the Declaration of Craig Mingay ("Mingay Decl.") in support, which is also submitted with this Motion.

## III. FACTS

Plaintiffs R.R., G.J., and R.G., all residents currently confined at the Special Commitment Center on McNeil Island, along with Plaintiff Disability Rights Washington, bring this class action

JOINT MOTION FOR: PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT; APPROVAL OF CLASS NOTICE PACKAGE; AND ESTABLISHMENT OF A SETTLEMENT APPROVAL HEARING AND PROCESS - 3

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

lawsuit against the Department of Social and Health Services (DSHS) and the Special Commitment Center (SCC), as well as Patricia Lashway, Acting Secretary of DSHS and William Van Hook, Chief Executive Officer of the SCC, both in their official capacities. Plaintiffs allege that Defendants failed to provide adequate care and treatment to SCC residents with serious mental illness, developmental and intellectual disabilities, traumatic brain injuries and other cognitive conditions and that these residents were unable to effectively engage in, or benefit from, the specialized sex offender treatment provided at the facility. Plaintiffs further allege that Plaintiffs, Plaintiff DRW's constituents, and other similarly situated residents are housed in restrictive conditions without meaningful access to appropriate treatment. In the Complaint, Plaintiffs allege that Defendants' failure to provide Plaintiffs and Plaintiff DRW's constituents with reasonable conditions and freedom from restraint at the SCC, and their failure to provide individualized and appropriate treatment at the facility, violate the 14th Amendment of the United States Constitution. Dkt. No. 1, ¶¶ 169-179. Plaintiffs further argue that such failures violate Section 504 of the Rehabilitation Act, and the Americans with Disabilities Act. Dkt. No. 1, ¶¶ 180-185.

Defendants, by entering into the proposed settlement agreement do not admit the allegations of the complaint, but share Plaintiffs' interest in ensuring constitutionally adequate treatment at the SCC. The parties anticipate that the appropriate and individualized treatment, as well as the therapeutic milieu, that is mandated through the terms of the Settlement Agreement will result in class members participating in, and benefiting from, the specialized sex offender treatment offered at the facility and may ultimately allow them to progress towards a less restrictive setting.

The proposed Settlement Agreement was reached after months of negotiations with Defendants. The parties participated in ongoing negotiations for the past year. Seevers Decl., ¶ 9.

JOINT MOTION FOR: PRELIMINARY APPROVAL OF
SETTLEMENT AGREEMENT; APPROVAL OF CLASS
NOTICE PACKAGE; AND ESTABLISHMENT OF A
SETTLEMENT APPROVAL HEARING AND PROCESS - 4

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 ᐧ Fax: (206) 957-0729

On October 20, 2016, the parties agreed to the final Settlement Agreement. *Id.* Because settlement has been reached prior to the actual filing of a complaint, the Complaint in this case is being filed concurrent with the proposed Settlement Agreement.

## IV. OVERVIEW OF THE SETTLEMENT AGREEMENT

This "Overview" section provides a summary of the key terms of the proposed Settlement Agreement. The "Law and Argument" section then addresses why the Court should preliminarily approve the agreement and authorize the class notification provisions therein.

### A. Defendants Shall Implement Comprehensive Reforms to the Treatment Program for SCC Residents with Disabilities.

Section II (C) of the Settlement Agreement contains the substantive programming and treatment changes required as a result of this litigation and settlement. *See generally, Appendix 1*, Section II (C). The key provisions of the Settlement Agreement are summarized below:

1) Defendants will provide a therapeutic milieu to serve residents with serious mental illness, developmental and intellectual disabilities, traumatic brain injuries, and other cognitive conditions. The settlement anticipates that Defendants will provide a treatment milieu similar to that at the Habilitative Mental Health units at Washington's state psychiatric facilities. The agreement directs the development of individualized treatment plans, and, where appropriate, the development of positive behavior support plans which will rely on data that is tracked and analyzed by clinical staff on a routine basis. *Appendix 1*, Section II (C)(1)(a). The agreement further directs that seclusion and restraint will only be used when less restrictive alternatives are not effective and when deemed clinically necessary to prevent immediate harm. *Appendix 1*, Section II

JOINT MOTION FOR: PRELIMINARY APPROVAL OF
SETTLEMENT AGREEMENT; APPROVAL OF CLASS
NOTICE PACKAGE; AND ESTABLISHMENT OF A
SETTLEMENT APPROVAL HEARING AND PROCESS - 5

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 ᐧ Fax: (206) 957-0729

(C)(1)(c). Other restrictions on resident movement will be clinically reviewed and only imposed when clinically necessary. *Id.*

2) Defendants will provide adequate clinical care. Under the terms of the Settlement Agreement, Defendants will provide these residents with adequate medical, psychiatric, psychological, rehabilitative, and nursing care. *Appendix 1*, Section II (C)(1)(b). The Settlement Agreement further directs that the Defendants will prioritize hiring staff to implement the terms of the agreement. *Id.*

3) Defendants will provide residents with serious mental illness, developmental and intellectual disabilities, traumatic brain injuries, and other cognitive conditions with an evidence-based sex offender treatment program. The program will be appropriate to the cognitive needs of this group of residents and individualized to provide needed accommodations and ensure that they have the opportunity to meaningfully participate and benefit from the treatment offered at the facility. *Appendix 1*, Section II (C)(1)(d).

4) Defendants will include discharge planning in the treatment plans for residents with serious mental illness, developmental and intellectual disabilities, traumatic brain injuries, and other cognitive conditions and will work to identify less restrictive placements and service providers in the community. *Appendix 1*, Section II (C)(1)(a), (e).

**B.  Class Certification and Class Release**

The proposed Settlement Agreement requires that the parties seek class certification. *Appendix 1*, Section I (B)(3)(a). As such, Plaintiffs have submitted a Joint Motion for Class Certification, concurrent with this Motion for Preliminary Approval. If the class is ultimately certified by the Court, and the proposed settlement is likewise approved, the Settlement Agreement

JOINT MOTION FOR: PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT; APPROVAL OF CLASS NOTICE PACKAGE; AND ESTABLISHMENT OF A SETTLEMENT APPROVAL HEARING AND PROCESS - 6

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 ᐧ Fax: (206) 957-0729

embodies a compromise and settlement of the putative class's disputed claims, as set forth in the Complaint in this proceeding. *Appendix 1*, Section II (B)(2).

C.     **Termination of Settlement Agreement**

The Settlement Agreement will remain in effect until the Defendants are in substantial compliance with all five substantive areas of the settlement. *Appendix 1*, Section II (D)(1)(a). The agreement provides that Defendants will be in substantial compliance within forty-eight (48) months. *Appendix 1*, Section II (C)(1)(a)-(e). Compliance will be assessed by a panel of three experts, which will determine by majority vote whether the Defendants are in substantial compliance. *Appendix 1*, Section II (D)(1)(b)(i)-(iv); Section II (D)(1)(d)(ii). Under the terms of the Settlement Agreement, one expert is selected by each party, with the third to be mutually agreed upon. *Appendix 1*, Section II (D)(1)(b)(ii). The panel will conduct its first review no later than 24 months after the signing of the Settlement Agreement. *Appendix 1*, Section II (D)(1)(b)(iii). At any time the Defendants may request the panel to review one or more of the substantive terms of the settlement for substantial compliance. *Appendix 1*, Section II (D)(1)(d)(i). The panel will issue reports regarding any evaluation of substantial compliance. *Appendix 1*, Section II (D)(1)(c)(iii) and Section II (D)(1)(d)(i). If the panel and parties agree that Defendants have achieved substantial compliance with all substantive terms of the settlement before the anticipated expiration, the parties may jointly move for dismissal. *Appendix 1*, Section II (D)(1)(d)(iv).

D.     **Attorney Fees and Litigation Costs**

After coming to agreement on the substantive terms of the settlement, the parties engaged in separate negotiations regarding attorneys' fees and costs. As a result of that negotiation, the Settlement Agreement provides that Defendants shall pay Class Counsel its actual lodestar attorneys' fees and costs, in the amount of $245,827.43, for Class Counsel's work through the

JOINT MOTION FOR: PRELIMINARY APPROVAL OF
SETTLEMENT AGREEMENT; APPROVAL OF CLASS
NOTICE PACKAGE; AND ESTABLISHMENT OF A
SETTLEMENT APPROVAL HEARING AND PROCESS - 7

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 ᐧ Fax: (206) 957-0729

fairness hearing in this matter. *Appendix 1*, Section II (E)(1)(a). The Settlement Agreement also calls for ongoing monitoring costs at $42,000 annually. *Appendix 1*, Section II (E)(1)(b). These costs reflect Class Counsel's participation in quarterly meetings, routine data review, and other ongoing monitoring activities. *Appendix 1*, Section II (C)(2). No additional fees or costs will be borne by any class members.

## V. LAW AND ARGUMENT

**A. Legal Standards for the Approval of a Class Action Settlement Agreement.**

Compromise of complex litigation is encouraged and favored by public policy. *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Federal Rule of Civil Procedure 23 governs the settlement of certified class actions and provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The Court must consider the settlement as a whole, "rather than the individual component parts," to determine whether it is fair and reasonable. *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003); *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998 ("The settlement must stand or fall in its entirety"). Where, as here, the settlement agreement includes broad prospective relief, the Court may include consideration of that relief in its decision. *See, e.g., Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 924 (9th Cir. 2011), *vacated on other grounds,* 772 F.3d 608 (9th Cir. 2014); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)

Federal Rule of Civil Procedure 23(e) sets forth the following procedures for settling a class action:

JOINT MOTION FOR: PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT; APPROVAL OF CLASS NOTICE PACKAGE; AND ESTABLISHMENT OF A SETTLEMENT APPROVAL HEARING AND PROCESS - 8

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 ・ Fax: (206) 957-0729

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

*Id.*

Judicial review of a proposed class settlement typically requires two steps: a preliminary approval review and a final fairness hearing. Preliminary approval is not a commitment to approve the final settlement; rather, it is a determination that "there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Professional Billing & Management Services, Inc.,* 2007 WL 4191749, *1 (D.N.J. 2007 (*citing In re Nasdaq Market-Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997)). *See also Nat'l Rural Telecomms. Coop. v. DIRECTTV, Inc*., 221 F.R.D. 523, 525 (C.D. Cal. 2004); MANUAL FOR COMPLEX LITIGATION (4th), § 21.632 at 320 (2004). If the settlement is preliminarily approved by the Court, then notice of the proposed settlement and the fairness hearing is provided to class members. At the fairness hearing, class members may object to the proposed settlement, and the Court decides whether the settlement should be approved.

As part of the Court's consideration, it should consider factors including:

JOINT MOTION FOR: PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT; APPROVAL OF CLASS NOTICE PACKAGE; AND ESTABLISHMENT OF A SETTLEMENT APPROVAL HEARING AND PROCESS - 9

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 ᛫ Fax: (206) 957-0729

> [T]he strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Staton*, 327 F.3d at 959. Some of these factors, such as the reaction of class members, can only be gauged after preliminary approval and notice is provided. Especially at this preliminary phase, the question is not "whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon,* 150 F.3d at 1027. And while the courts have generally found that a "more probing inquiry" should be used when settlement is reached before the certification of a class, given the potential dangers of collusion and the due process concerns of absent class members, the proposed Settlement Agreement more than survives that searching inquiry. *Id.,* at 1026.

In this case, the parties negotiated at arm's length over the course of many months to arrive at a Settlement Agreement that results in comprehensive reform to the treatment provided to SCC residents with serious mental illness, intellectual and developmental disabilities, traumatic brain injuries, and other cognitive conditions, including the creation of a therapeutic milieu for these residents, individualized treatment and discharge planning, access to appropriate medical, psychiatric, and rehabilitative services, and the provision of an evidence-based sex offender treatment program appropriate to the cognitive needs of the class. The settlement is patently fair and adequate, and was not the result of collusion between the parties.

JOINT MOTION FOR: PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT; APPROVAL OF CLASS NOTICE PACKAGE; AND ESTABLISHMENT OF A SETTLEMENT APPROVAL HEARING AND PROCESS - 10

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 · Fax: (206) 957-0729

## B. Plaintiff's Case Is Strong, But the Risk that Litigation Could Go on for Years Was Also High.

Plaintiffs believe the case for the injunctive and declaratory relief sought is very strong and that they would prevail at trial. The proposed settlement agreement provides for clear standards for the provision of treatment, payment of attorneys' fees and costs, and future monitoring costs, and was accomplished within one year of Class Counsel's notification to Defendants of its intent to file a complaint in this action. This resolution is a victory for all involved without the delay and additional attorneys' fees and costs that litigation would have entailed.

Similar litigation has taken many years to reach a similar stage. Indeed, the SCC itself was subject to extended litigation and court oversight from 1994 until 2007, in what the Court referred to as a "history making injunction." *Turay v. Richards*, 2007 WL 983132, at *1 (W.D. Wa 2007), *aff'd* 2009 WL 229838 (9th Cir. 2009). Other cases in which the adequacy of a sex offender civil commitment treatment program has been litigated have been similarly protracted. For example, in *Karsjens v. Jesson*, 109 F. Supp. 3d 1139, 1144 (D. Minn. 2015), more than four years after residents at a Minnesota sex offender treatment facility filed a federal complaint, the program was found unconstitutional after a six week trial. That order has been reversed on appeal and remanded for additional proceedings, although the mandate for the appeal has yet to issue; the issues raised in that case remain unresolved. *Karsjens, et al v. Piper et al*, Case No. 15-3485 (8th Cir. 2016). Similarly, in *Canupp v. Sheldon*, residents in Florida's sex offender treatment facility filed a complaint in 2004 and only after extensive discovery, multiple expert tours of the facility, and pre-trial motions, did the parties reach settlement in 2009. *Canupp v. Sheldon*, 2009 WL 4042928, *1-3 (M.D. Fla. 2009), *aff'd sub nom. Canupp v. Liberty Behavioral Healthcare Corp.*, 447 F. App'x 976 (11th Cir. 2011). Class Counsel seeks to avoid such protracted litigation and establish a

JOINT MOTION FOR: PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT; APPROVAL OF CLASS NOTICE PACKAGE; AND ESTABLISHMENT OF A SETTLEMENT APPROVAL HEARING AND PROCESS - 11

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 ᐧ Fax: (206) 957-0729

Settlement Agreement and monitoring process that would rapidly and efficiently address the treatment needs of class members.

**C.  The Reform in the Agreement Is Fair, Adequate, and Reasonable.**

The Settlement Agreement provides clear standards for the treatment provided to SCC residents with serious mental illness, intellectual and developmental disabilities, traumatic brain injuries, and other cognitive disorders. The Settlement Agreement directs provision of a treatment milieu similar to those that have been created at the state hospitals as a result of similar litigation. *Appendix 1*, Section II (C)(1)(a). The Settlement Agreement strictly limits the use of segregation and restraint and enhances individualized treatment planning, including discharge planning, as well as appropriate psychiatric, medical, and rehabilitative care for class members. *Appendix 1*, Section II (C)(1)(b)-(d). The improved care and conditions called for in the Settlement Agreement ensures that class members will be offered appropriate individualized treatment in a therapeutic milieu.

**D.  The Settlement Agreement Provisions Governing Attorneys' Fees and Litigation Costs Are Fair and Reasonable.**

The parties have agreed that Defendants will pay Plaintiffs' attorneys' fees. *Appendix 1, Section II (E)(1)(a).* Thus, Defendants, not the Plaintiff class, will pay Class Counsel's reasonable attorneys' fees and costs, and future monitoring fees.  Reasonableness is first assessed by calculating counsel's "lodestar," *i.e.* a figure derived by "multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate." *McCown v. City of Fontano Fire Dept.*, 565 F.3d 1097, 1102 (9th Cir. 2009). The hours include time "reasonably expended in pursuit of the ultimate result achieved in a manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter." *Hensley v. Eckerhart*, 461 U.S.

424, 431 (1983). As a general rule, "the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). The initial burden is on prevailing counsel to provide evidence demonstrating "the number of hours spent, and how it determined the hourly rate requested." *McCown*, 565 F.3d at 1102; *Ruff v. County of Kings*, 700 F. Supp.2d 1225, 1228 (E.D. Cal. 2010). Class Counsel performed this calculation after agreement was reached on the substantive terms of the settlement and, after additional negotiation, the parties agreed to a mutually acceptable sum. *Appendix 1*, Section II (E)(1)(a), (b).

**E.  The Settlement was the Result of Arm's-Length Negotiations.**

This case was negotiated at arm's length over a period of many months. *See* Seevers Decl., ¶ 9. The parties' counsel met repeatedly in face-to-face sessions and via conference call.

**F.  There Was Sufficient Discovery.**

While the resolution in this case was reached without first filing a complaint, and therefore prior to formal discovery, over the course of Disability Rights Washington's investigation at the SCC, it reviewed more than 18,000 pages of documentation. Seevers Decl., ¶ 4. As the designated protection and advocacy organization for Washington, Disability Rights Washington had the federal authority to access resident records, including video recordings, treatment notes and plans, and incident and death reports, all prior to commencing litigation. In addition, DRW conducted numerous monitoring trips to the facility, speaking with staff and interviewing residents about the treatment program. Seevers Decl., ¶ 2, 4, 7. DRW also spoke with public defenders and assigned counsel that represented residents at the facility in their civil commitment proceeding, as well as family members of residents at the SCC. *Id.* DRW contacted various experts in the field and

JOINT MOTION FOR: PRELIMINARY APPROVAL OF
SETTLEMENT AGREEMENT; APPROVAL OF CLASS
NOTICE PACKAGE; AND ESTABLISHMENT OF A
SETTLEMENT APPROVAL HEARING AND PROCESS - 13

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 ・ Fax: (206) 957-0729

attorneys that had litigated similar issues in other states, regarding various treatment issues at the facility. Seevers Decl., ¶ 8. Finally, in November 2015, DRW retained Dr. Robin Wilson, an expert in the field, who reviewed SCC program materials and resident records. Seevers Decl., ¶ 7. He also conducted a tour of the facility, interviewing many class members, including some named Plaintiffs, and speaking with SCC clinical staff. Dr. Wilson was ultimately selected as the mutually agreed upon expert in the three-expert compliance panel called for in the Settlement Agreement. *Appendix 1*, Section II (D)(1)(b)(ii). In sum, DRW's investigation in this case was more than sufficient to reach a settlement.

**G.  Class Counsel Is Experienced in Similar Litigation and Recommends Settlement.**

Class Counsel is very experienced in similar class action litigation and strongly recommends that the Settlement Agreement be approved. Seevers Decl., ¶ 13.

**H.  The Proposed Notice, Opportunity to Submit Objections, and Fairness Hearing Are Sufficient to Safeguard the Interests of Class Members.**

The Court should also approve the proposed notice and direct that it be provided to each class member. *See Appendix 2*. This proposed notice adequately summarizes the Settlement Agreement, informs class members where they can get further information, offers to have Class Counsel meet with individuals, explains how class members can file objections and/or comments, and informs class members of the date and time of the settlement approval hearing. Given that many class members have cognitive conditions that may make it difficult for them to understand the written notice, Class Counsel has also created a short video, describing the process of negotiation, highlighting the terms of the settlement, and informing class members about the fairness hearing. *Appendix* 1, Section I (B)(3)(d)(iv). The script of that video is appended. *See Appendix 3*. In addition, the Settlement Agreement calls for Class Counsel to conduct two group

JOINT MOTION FOR:  PRELIMINARY APPROVAL OF
SETTLEMENT AGREEMENT; APPROVAL OF CLASS
NOTICE PACKAGE; AND ESTABLISHMENT OF A
SETTLEMENT APPROVAL HEARING AND PROCESS - 14

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 ᛫ Fax: (206) 957-0729

trainings at the SCC and one training at each SCTF, where residents can also request one-on-one assistance. *Appendix* 1, Section I (B)(3)(d)(ii). Interested class members will have an opportunity to consult with Class Counsel or an attorney of their own choosing. Lastly, should any objections of substance be made, the Court can provide the objector with an opportunity to be heard at the final approval hearing.

**I.    A Final Approval Hearing Should Be Set.**

Finally, class members with comments, concerns or objections to any aspect of the Settlement Agreement should be provided with an opportunity to submit written material for the Court's consideration. Given that class members may have cognitive disabilities that make it difficult for them to submit written comments, Class Counsel will offer to assist class members in submitting such comments or, in the event of a conflict, assist class members in identifying another attorney that can assist them in submitting those comments. Class members who wish to appear in person to address the Court with any comments, concerns or objections should also be provided with an opportunity to appear at a hearing before the Court decides whether to finally approve the Settlement Agreement. Given the security precautions that are required in order to transport even one SCC resident off the island, Class Counsel respectfully suggests that the Court hold the fairness hearing at the SCC. Holding the hearing on the island would impose less of a burden on SCC's security staff and will enable class members with mental illness, developmental and intellectual disabilities, traumatic brain injuries and other cognitive conditions to participate in the hearing more easily, without the disruption of traveling off-island under heavy security.

Class members who wish to appear in person should notify the Court and the parties of their desire to be heard, along with a statement of the issue or issues that they would like to address. If the class member is unable to draft a written statement due to disability, Class Counsel will assist

JOINT MOTION FOR: PRELIMINARY APPROVAL OF
SETTLEMENT AGREEMENT; APPROVAL OF CLASS
NOTICE PACKAGE; AND ESTABLISHMENT OF A
SETTLEMENT APPROVAL HEARING AND PROCESS - 15

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 ᐧ Fax: (206) 957-0729

the class member in drafting the statement or, in the event of conflict, assist class members in identifying another attorney that can assist them in submitting the statement. The proposed notice, attached as *Appendix 2*, and the Proposed Order submitted with this motion, require that such notice be given so that the Court and the parties can consider and address the specific issues that class members wish to raise at the hearing. Finally, Plaintiffs request that the Court set a hearing date to consider class members' comments and to decide whether the Settlement Agreement should be finally approved and implemented.

**J.    Proposed Scheduling Order**

The Plaintiffs propose that the Court issue a scheduling order along with preliminary approval of the Settlement Agreement. The Proposed Order includes a proposed schedule which includes deadlines for: (1) sending class notice; (2) class members filing comments and objections with the Court; and (3) the filing of a motion for final approval of the Settlement Agreement.

## VI.    CONCLUSION

The Parties respectfully requests that the Court:

(a)    preliminarily approve the Settlement Agreement;

(b)    authorize the mailing of notice to the settlement class members and other forms of notice provided for in the Settlement Agreement; and

(c)    establish a final settlement approval hearing and process.

DATED:  February 1, 2017.

**DISABILITY RIGHTS WASHINGTON**

*/s/ David Carlson*
*/s/ Rachael Seevers*
*/s/ Anna Guy*
David R. Carlson, WSBA No. 35767
Rachael Seevers, WSBA No. 45846
Anna Guy, WSBA No. 48154

JOINT MOTION FOR:  PRELIMINARY APPROVAL OF
SETTLEMENT AGREEMENT; APPROVAL OF CLASS
NOTICE PACKAGE; AND ESTABLISHMENT OF A
SETTLEMENT APPROVAL HEARING AND PROCESS - 16

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington  98104
(206) 324-1521 · Fax: (206) 957-0729

**CARNEY GILLESPIE ISITT PLLP**

/s/Christopher Carney
/s/Sean Gillespie
/s/Kenan Isitt
Christopher Carney, WSBA No. 30325
Sean Gillespie, WSBA No. 35365
Kenan Isitt, WSBA No. 35317
600 1st Ave Ste LL08
Seattle, WA 98104

**Attorneys for Plaintiffs**


**ROBERT W. FERGUSON**
**Attorney General**

/s/ Craig Mingay
CRAIG B. MINGAY, WSBA No. 45106
JOSHUA P. WEIR, WSBA No. 49819
Assistant Attorneys General
Office of the Attorney General
P.O. Box 40124
Olympia, WA 98504-0124
Telephone: (360) 586-6565
Fax: (360) 586-6658
E-mail: CraigM1@atg.wa.gov
JoshuaW1@atg.wa.gov

**Attorneys for Defendants**

JOINT MOTION FOR: PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT; APPROVAL OF CLASS NOTICE PACKAGE; AND ESTABLISHMENT OF A SETTLEMENT APPROVAL HEARING AND PROCESS - 17

Disability Rights Washington
315 5TH Avenue South, Suite 850
Seattle, Washington 98104
(206) 324-1521 ・ Fax: (206) 957-0729